**Michael CURRY, Appellant,**

v.

**ST. LOUIS COUNTY, Missouri, Respondent.**

**No. 55371.**

Missouri Court of Appeals, Eastern District, Division Three.

June 30, 1989.

Richard Andrew Barry, III, St. Louis, for appellant.

Dana Kay Pulis, St. Louis, for respondent.

SIMON, Judge.

Appellant, Michael Curry (Curry), appeals from an order upholding the decision of the Board of Police Commissioners of St. Louis County (Board) to terminate Curry's employment as a police officer with the St. Louis County Police Department.

On appeal, Curry alleges: (1) the Board failed to exercise independent judgment both as to the factual issues involved and as to the suitability of the administrative discipline recommended by the hearing officer; (2) the Board failed to provide this court with a sufficient record for review by not attributing a specific punishment to each of the administrative offenses lodged against Curry; and, (3) the Board lacks substantial and competent evidence to sup-

port its decision that Curry violated Article 16 of the Rules of Conduct of the St. Louis County Police Department (Rules of Conduct), the allegation that he had substantial knowledge of the criminal activities of his wife and failed to report them. We affirm.

Our scope of review has been aptly set forth by this court in *Jarrett v. Hill*, 648 S.W.2d 170 (Mo.App.1983):

> The scope of our review is equivalent to that of the Circuit Court, and we therefore review only the decision of the [Board].... In addition we are limited to a determination of whether the decision of the [Board] is supported by competent and substantial evidence upon the whole record, whether it was arbitrary, capricious or unreasonable or whether the [Board] abused its discretion.... Moreover, the evidence must be considered in a light most favorable to the finding of the [Board], together with all reasonable inferences which support it, and if the evidence would support either of two opposed findings, the reviewing court is bound by the [Board's] determination.... (Citations omitted.)

*Id.* at 172[1–3].

Applying these principles to the present case, the evidence reveals the following. On November 19, 1986, G.H. Kleinknecht, Superintendent of St. Louis County Police Department (Superintendent), sent a written notice to Curry informing him that he was discharged as an employee of St. Louis County Police Department. The notice contained nine offenses specifying violation of certain General Orders and Articles of the Rules of Conduct. The offenses will be grouped into four different classes: (1) disobedience of orders by departing from assigned beat; (2) altering a subpoena to appear in court; (3) disobedience of orders by engaging in secondary employment without authorization; and, (4) dishonorable business dealings and failure to report his wife's part therein. The events which led to this notice began when the St. Louis County Police Department's Bureau of Internal Affairs began an investigation of Curry in April, 1985, pursuant to a police detective's complaint to Captain Vincent

Manning of the Creve Coeur Police Department alleging that Curry and his wife, Pamela, were involved in a fraudulent credit card scheme.

Curry was also notified of his right to appeal the Superintendent's decision to the Board. Curry timely appealed and a hearing was held on March 30, 1987, before a hearing officer. Twenty-two witnesses were heard and one hundred nineteen exhibits were received. On May 15, 1987, the hearing officer submitted to the Board extensive findings of fact, conclusions of law and recommendations. On August 21, 1987, the Board adopted the hearing officer's findings of fact and conclusions of law, and set forth its decision to affirm Curry's discharge. Thereafter, on September 18, 1987, Curry sought review of the Board's decision in the circuit court pursuant to Chapter 536 RSMo 1986. On August 15, 1988, the trial court affirmed the Board's decision. This appeal followed.

■ In his first point, Curry essentially argues that the Board failed to exercise independent judgment evidenced by its adoption of the hearing officer's findings of fact, conclusions of law and recommendations. Initially, we note that Curry has not directed us to nor has our research uncovered a case for Curry's proposition that a Board cannot adopt a hearing officer's findings of fact and conclusions of law. The hearing officer made extensive findings of fact, conclusions of law and recommendations based on the testimony and exhibits fully addressing each issue. Furthermore, his conclusions of law do not uphold all of the offenses alleged by the Superintendent. In particular, the hearing officer concluded that Curry himself was not shown to have engaged in fraudulent, deceitful or dishonorable practices but did have knowledge that a crime had been committed and failed to report such knowledge to proper authorities.

■ The Board is required to make findings of fact sufficient to allow an appellate court to perform the scope of review permitted. Thus, the Board is required to make findings of fact on the contested issues presented to it. *Webb v. Board of*

*Police Commissioners of Kansas City,* 694 S.W.2d 927, 929[2] (Mo.App.1985). The record clearly establishes the Board complied with this requirement.

■ Curry also complains that due process was violated by the amount of time between the submission of the hearing officer's findings to the Board and the Board's decision, a period of 123 days. However, Curry made no attempt during this time to utilize § 536.100 RSMo 1986, which provides a remedy to prevent unreasonable delay by the Board in rendering its decision. Further, it can be reasonably inferred that the time taken by the Board in reaching its decision indicates its review of the extensive record. We find no evidence to indicate that the Board did not make an independent judgment. Curry's first point is denied.

■ In his second point, Curry contends that the Board failed to provide a sufficient record for review by not attributing a specific punishment to each of the administrative offenses lodged against him. Curry argues that the investigation surrounding the offenses stemmed from his wife's criminal activities. The additional charges; *i.e.,* those independent of any dealing with his wife, are only incidental offenses and, therefore, the Board abused its discretion by failing to assess particular punishment to each offense.

The Board, in its findings of fact, conclusions of law and decision, not only set forth extensive findings but also set forth specific findings addressing each individual offense. The Board's conclusions of law also addressed each offense. In particular, the Board concluded that:

> In connection with Conclusions Nos. 6, 7 and 8, it is observed that they are particularly reprehensible as showing a manifest disregard of duty coupled with unabashed fraud and deceit in a shameful and crude attempt at concealment.

Conclusions Nos. 6, 7 and 8 concern: Curry's departure from his assigned beat; Curry's alteration of a subpoena; and, Curry's false representation to his superiors that he had responded to a call.

Clearly, the Board considered all of the offenses of a serious nature. Further, the record establishes the Board considered each offense in assessing Curry's punishment and thus provided an sufficient record for review. Curry's second point is denied.

■ Finally, Curry alleges the Board lacks substantial and competent evidence to support its decision that he had substantial knowledge of the criminal activities of his wife and failed to report them.

We shall not set forth all the evidence supporting the Board's conclusion that Curry had knowledge of his wife's criminal activities. Suffice it to say there is substantial and competent evidence to support the Board's conclusion. Such evidence includes: Vernon Wavra, Sears, Roebuck and Company's (Sears) Service Credit Manager, testified that Pamela Curry purchased over $4,788.00 worth of merchandise at Sears with a credit card she obtained fraudulently. Among the merchandise purchased, was a men's 42 long suit. Curry's uniform jacket is also 42 long. Officer John McCrady, a St. Louis County Police Officer assigned to conduct an investigation of Curry, testified that when he interviewed Curry, Curry admitted that he accepted the suit from his wife and also other items such as tools, clothing and jewelry. McCrady further testified that when he asked Curry whether he attempted to return any of the items or make restitution, Curry said no.

Additionally, Curry and his wife opened at least six joint accounts at banks and savings and loan associations. One such account, at Lemay Bank, was opened in approximately July, 1981. Officer McCrady testified that his investigation revealed that approximately seventeen forged or stolen checks were deposited by Pamela Curry into the account. Curry also made several deposits and withdrawals in this account. The account was closed in approximately October, 1981.

A thorough review of this evidence and the entire record and the reasonable inferences therefrom clearly reveal that there was substantial and competent evidence to

support the Board's finding that Curry had knowledge of his wife's criminal activity. Further, the record indicates that Curry made no report of her activities. Curry's third point is denied.

Judgment affirmed.

DOWD, P.J., and HAMILTON, J., concur.